ARIEL STERN, ESQ.
Nevada Bar No. 8276
NATALIE L. WINSLOW, ESQ.
Nevada Bar No. 12125
JAMIE K. COMBS, ESQ.
Nevada Bar No. 13088
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Telephone:   (702) 634-5000
Facsimile:    (702) 380-8572
Email: ariel.stern@akerman.com
Email: natalie.winslow@akerman.com
Email: jamie.combs@akerman.com

*Attorneys for NewRez LLC dba Shellpoint Mortgage Servicing, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WING-WAH HO, and WAI CHING EILEEN HO, individuals<br><br>Plaintiff,<br><br>v.<br><br>NEWREZ LLC dba SHELLPOINT MORTGAGE SERVICING, a Delaware Limited Liability Company; DOES I through X, inclusive,<br><br>Defendants. | Case No.: 2:21-cv-00615-APG-DJA<br><br>**NEWREZ LLC dba SHELLPOINT MORTGAGE SERVICING, LLC'S MOTION TO DISMISS COMPLAINT** |

NewRez LLC d/b/a Shellpoint Mortgage Servicing, LLC moves to dismiss the complaint.

**I.   INTRODUCTION**

The Hos lost title to the property when the HOA foreclosed in 2014. Despite that they no longer have any interest, they assert Shellpoint's deed of trust expired under Nevada's ancient mortgage statute, NRS 106.240. The Hos lack standing to bring this action.

The complaint also fails on the merits. *First*, NRS 106.240 only discharges a mortgage lien ten years after the loan becomes "wholly due." Under the express terms of the deed of trust, the loan at issue does not come due until 2035. *Second*, acceleration does not trigger NRS 106.240 under the statute's terms. And even after acceleration a borrower can cure through partial payment—meaning

57948960;1

the Hos' loan was never truly "wholly due." *Third,* unrecorded letters cannot make a loan "wholly due" for purposes of NRS 106.240, as the statute recognizes only certain recorded documents—the deed of trust or a recorded extension—as establishing the trigger date.

*Fourth*, a recorded notice of rescission decelerated any prior acceleration. The Nevada Supreme Court recently resolved another case involving similar facts in favor of the lienholder on this basis. *Glass v. Select Portfolio Servicing, Inc.*, No. 78325, 2020 WL 3604042, at *1 (Nev. July 1, 2020) (unpublished disposition).

*Lastly*, even if NRS 106.240 was triggered and not negated by the rescission, equitable considerations require the court to toll NRS 106.240's application while a prior quiet title action concerning the property was pending for four years.

## II. FACTS

### A. Deed of trust history

The Hos purchased the property at 9462 Oro Silver Court, Las Vegas, NV 89178 for $247,600 in October 2005. *See* Compl., ¶¶ 1, 8; *see also* **Exhibit A**. Shellpoint is the recorded deed of trust beneficiary. *See* Compl., ¶¶ 2, 14-16; *see also* **Exhibit B.**

### B. Default & deed of trust foreclosure proceedings

The Hos defaulted on their loan in January 2010. They allege receipt of a letter accelerating the amounts owed under the loan. Compl. ¶ 17. On May 12, 2010, the lender recorded a default notice. *Id.* ¶ 18; *see also* **Exhibit C**. The lender rescinded the May 12, 2010 notice in December 2012. *Id.* ¶¶ 19-20; *see also* **Exhibit D**. The lender recorded another default notice in July 2014. *Id.* ¶ 21; *see also* **Exhibit E**. The lender caused a foreclosure mediation certificate to be recorded in December 2014, followed by a notice of sale. *Id.* ¶¶ 22-23; *see also* **Exhibits F, G.**

### C. HOA foreclosure and prior litigation

The Hos also defaulted on their HOA assessments, resulting in an HOA foreclosure on June 12, 2014. **Exhibit H** (foreclosure deed). The loan servicer at the time tendered the superpriority amount before the sale, and the HOA recorded a superpriority satisfaction notice. **Exhibit I**. A Oro, LLC purchased the property at the sale for $2,626. Ex. H. Despite record notice the superpriority amount was paid, the purchaser sued for quiet title in August 2019 requesting an order the sale

extinguished the first deed of trust. **Exhibit J**. The purchaser lost the quiet title suit, and the Nevada supreme court affirmed judgment in favor of the lender in February 2019. **Exhibits K, L**. A Oro, LLC remains the record title owner, subject to the deed of trust. *See* **Exhibit M**.

### III.     REQUEST FOR JUDICIAL NOTICE

A court may take judicial notice of "matters of public record" including documents publicly recorded and filed. *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986); *see Stockmeier v. Nev. Dep't. of Corr.*, 183 P.3d 133, 135 (Nev. 2008). This court should judicially notice Exhibits A-I and M, which are matters of public record either recorded against the property with the Clark County Recorder's Office or information publicly available through the Clark County Assessor's office. Exhibits A-G are also referenced in the Hos' complaint. This court should also judicially notice the documents filed in the prior litigation, Exhibits J-L.

### IV.     LEGAL STANDARD

Rule 12(b)(6) mandates that a court dismiss any claims that fail to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

### V.      ARGUMENT

The Hos are not entitled to quiet title. They lack standing because they no longer hold title to the property. Even if the Hos owned the property, NRS 106.240 did not extinguish the deed of trust because the loan is not yet "wholly due." For the same reason, the Hos' fraud/misrepresentation claim fails. The Hos are also not entitled to equitable rescission of the note or deed of trust.

####     A.     The Hos lack standing

"Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." FED. R. CIV. P. 12(h)(3); *see Stock W. Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). A plaintiff's constitutional standing "is a threshold issue in every case before a federal court." *Turner v. McGee*, 681 F.3d 1215, 1218 (10th Cir. 2012). Where a party lacks standing, the court does not have jurisdiction and the case must be dismissed. *Righthaven LLC v. Newman*, 838 F. Supp. 2d 1071, 1073-74 (D. Nev. 2011).

///

57948960;1

The Hos bear the burden to establish standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). They must show: "(1) an 'injury in fact;' (2) the injury is 'fairly traceable' to the complained-of conduct; and (3) it is 'likely as opposed to speculative that the injury will be redressed by a favorable decision.'" *Turner*, 681 F.3d at 1218 (quoting *Lujan*, 504 U.S. at 560-61).

The Hos lack standing because they no longer hold title. A Oro, LLC purchased the property in 2014 at an HOA sale. Exs. H, M. The Hos cannot claim that a deed of trust against property they no longer own causes them to suffer any "injury in fact." Nor will an order extinguishing the deed of trust redress any injury to the Hos, as it will not restore title to them. The Hos lost any standing they had to complain of the continued encumbrance when they lost title through the HOA sale.

**B.   The Hos are not entitled to quiet title**

**1.   The Hos do not allege they paid the debt**

The burden of proof in a quiet title action rests with the plaintiff to prove good title in himself. *Resources Grp., LLC as Tr. of E. Sunset Rd. Tr. v. Nevada Ass'n Servs., Inc.*, 437 P.3d 154, 157–58 (Nev. 2019); *see also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996), *abrogated on other grounds by Delgado v. Am. Family Ins. Grp.*, 217 P.3d 563, 567 (Nev. 2009). A plaintiff's right to relief ultimately depends on superiority of title. *Id.* Because "[a] plea to quiet title does not require any particular elements, . . . each party must plead and prove his or her own claim to the property in question." *Id.* "Additionally, an action to quiet title requires a plaintiff to allege that she has paid any debt owed on the property." *Wong v. Citi Home Loans Servicing LP*, No. 2:11-CV-001428-ECR, 2012 WL 1900947, at *5 (D. Nev. May 23, 2012).

The Hos do not allege they paid off the loan. Compl. at ¶¶ 17, 21. They are not entitled to quiet title as a result.

**2.   The loan does not become wholly due under NRS 106.240 until 2035**

A deed of trust "appearing of record, and not otherwise satisfied and discharged of record, shall at the expiration of ten years after the debt secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof become wholly due, terminate, and it shall be conclusively presumed that the debt has been regularly satisfied and the lien discharged." NRS 106.240. An obligation that becomes fully or wholly due cannot be satisfied or altered by

4

partial rather than complete performance. *See generally Effect of Performance as Discharge and of Non-Performance as Breach*, Restatement (Second) of Contracts § 235 (updated Oct. 2019).

NRS 106.240 is "clear and unambiguous," meaning "no further interpretation is required or permissible." *Pro-Max Corp. v. Feenstra*, 16 P.3d 1074, 1077 (Nev. 2001). Under the "clear and unambiguous statute," only two documents state the "wholly due" date—the deed of trust, or a written and recorded extension of the wholly due date. No other documents are mentioned, including acceleration letters or default notices.

Reading NRS 106.240 as *implicitly* permitting acceleration letters or default notices to affect the statute's application conflicts with well-established canons of statutory interpretation. "[T]he 'doctrine of expressio unius est exclusio alterius as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'" *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1054 (9th Cir. 2018) (citation omitted). "The maxim 'Expressio Unius Est Exclusio Alterius', the expression of one thing is the exclusion of another, has been repeatedly confirmed in this State." *Galloway v. Truesdell*, 422 P.2d 237, 246 (Nev. 1967). NRS 106.240's explicit references to "deeds of trust" and "recorded extensions" setting the "wholly due" date for purposes of triggering the ten-year clock precludes other documents, such as letters or default notices, from doing so.

The statutory history confirms the point.[1] The law, enacted in 1917, was amended in 1965 to include more documents (deeds of trust in addition to mortgages, and recorded extensions in addition to both) as potential triggers. If the legislature intended to add unrecorded letters to the list, it could have done so. Although Nevada made sweeping changes to the laws governing foreclosures following the 2008 housing crisis, NRS 106.240 remained untouched, and remains much in the same form as it existed since 1917. This history refutes any contention that the Nevada legislature

---

[1] "Statutory history" refers to the evolution of a statutory scheme as evidenced by its actual, enacted provisions; it is often contrasted with "legislative history" in its sense of referring to unenacted material like floor statements, committee reports, and the like. *See, e.g., Chhetri v. United States*, 823 F.3d 577, 587 n.13 (11th Cir. 2016) (differentiating statutory history from legislative history); *United States v. Hoslett*, 998 F.2d 648, 656 (9th Cir. 1993) (stating that both legislative history and statutory history support result).

57948960;1

intended letters to a borrower to trigger NRS 106.240, a statute that for more than a century has conspicuously omitted any mention of them.

At least one Nevada court has rejected the argument other events can make the loan "wholly due" before the stated maturity date. "The plain meaning of [NRS 106.240] states that the due date can be extended upon a recorded written document extending the terms. However, the statute does not say that the debt's due date can be accelerated." *Hofele v Deutsche Bank Nat. Trust, Co.*, No. 17-A-752664, 2018 WL 4760698, at *4 (Nev. Dist. Ct. Aug. 28, 2018).

Federal and state appellate courts have often reached the same conclusion in connection with other states' ancient-lien statutes. *See, e.g.*, *In re Hartman*, 763 F. App'x 160, 164 (3d Cir. 2019) ("The legislature expressly provided for an adjustment of the statute of limitations where the maturity date had been extended, but did not include similar language to address accelerated maturity dates, though it could have. Therefore, it would be improper to now read such a provision into the text.") (New Jersey law); *see also Harry v. Countrywide Home Loans, Inc.*, 902 F.3d 16, 19 (1st Cir. 2018) (similar; Massachusetts law); *Fitzpatrick v. U.S. Bank Nat'l Ass'n*, 173 Conn. App. 686, 692 (Conn. App. Ct. 2017) (similar; Connecticut law).

Relying on a deed of trust's final maturity date is consistent with similar statutes in other jurisdictions.[2] Nevada's 100-year-old, one-sentence ancient-lien statute was enacted for the same purpose as those of other states—to provide a non-judicial mechanism to terminate ancient and forgotten liens, thereby improving marketability of title. "Wholly due" should be read in line with the prevailing practices of other jurisdictions to mean the deed of trust's final maturity date.

///

///

---

[2] *See* A.R.S. § 33-714 ("the final maturity date or the last date fixed for payment of the debt or performance of the obligation"); Cal. Civ. Code § 882.020 ("the final maturity date or the last date fixed for payment of the debt … ascertainable from the recorded evidence of indebtedness"); Colo. Rev. Stat. Ann. §§ 38-39-201 ("the date on which the final payment or performance of the obligation secured thereby is due as shown by such mortgage or deed of trust recorded in the office of the county clerk"); O.C.G.A. 44-14-80 ("the maturity of the debt or debts or the maturity of the last installment thereof as stated or fixed in the record of the conveyance"); Mo. Ann. Stat. § 516.150 ("the date at which the last maturing obligation secured by the instrument sought to be foreclosed is due on the face of such instrument").

57948960;1

1  The deed of trust sets the loan's maturity date for November 1, 2035. *See* Ex. A. The loan does not become wholly due until *at least* 2035, and the Hos—or the current title owner—cannot seek quiet title on this basis until 2045.

### 3.  Acceleration does not trigger NRS 106.240

To agree with the Ho's position, the court would have to ignore the statute's plain language to find the debt presumptively extinguished ten years after acceleration. The court is to give meaning to all words in the statute. *U.S. v Wenner*, 351 F.3d 969, 975 (9th Cir. 2003) (citing *Ratziaf v. U.S.*, 510 U.S. 135, 140-141 (1994)).

Applying a similar obsolete mortgage statute last year, the Massachusetts appeals court rejected a borrower's argument that acceleration shortens the period for an ancient mortgage statute to automatically clear an old mortgage from title. *Nims v. Bank of New York Mellon,* 97 Mass. App. Ct. 123, 128, 142 N.E.3d 1124, 1129, *review denied*, 485 Mass. 1105, 150 N.E.3d 1121 (2020). The court explained:

> The statute is designed to create a definite point in time at which an old mortgage will be deemed discharged by operation of law; nothing suggests that the statute is designed to <u>shorten</u> the period during which a mortgage is enforceable. In this way, it serves to quiet title with respect to old mortgages, without shortening the period of enforceability of mortgages before their term or maturity date has been reached.

150 N.E.3d at 1126 (emphasis in original). The court concluded the borrower's argument otherwise was "at odds with the purpose and design of the statute which . . . establishes dates at which old mortgages will be deemed discharged so as to quiet title." *Id.* at 1129. The same is true for NRS 106.240. It creates a definite point in time when an old mortgage will be deemed discharged, without shortening the mortgage's enforceability period before the maturity date.

This interpretation is consistent with the meaning of the term "wholly due." For a loan to become "wholly due" as the term is commonly used, payment in full must be the borrower's only non-breaching option. Even *after* an acceleration letter and recorded default notice, the borrower retains the "right to reinstate" by making a *partial* reinstatement payment. Ex. A, deed of trust, § 19. An acceleration does not render the obligation "wholly due" under any reasonable meaning of that term, as the borrower could bring the loan current by making only a partial payment.

Like the statute in Massachusetts, NRS 106.240 is not triggered by acceleration.

7

### 4. Alternatively, the 2012 rescission decelerated the loan

Even assuming acceleration could trigger NRS 106.240, it would only apply in situations where the acceleration appears *in the property records*, consistent with the statute's text referencing documents "appearing of record." An unrecorded letter is insufficient.

NRS 106.240 appears in a chapter that deals with recorded instruments.[3] But if unrecorded letters change the "wholly due" date for purposes of NRS 106.240, courts will have to look *outside* the title record to calibrate the ten-year clock. Reading NRS 106.240 broadly enough to mean these extra-record events affect the date when the ten-year clock starts defeats the statute's purpose—it would be impossible to determine from the record alone when the loan would become "wholly due."

Where a default notice is recorded, a rescission is sufficient to decelerate the loan. *Glass v. Select Portfolio Servicing, Inc.*, No. 78325, 2020 WL 3604042, at *1 (Nev. July 1, 2020).[4] In *Glass*, a default notice was recorded in 2008, and rescinded in 2010. *Id.* The rescission stated it "does hereby rescind, cancel and withdraw the notice of default and election to sell." *Id.* The homeowner sued to quiet title based on the default notice she alleged accelerated the loan, making the deed of trust expire ten years later under NRS 106.240. *Id.* The district court granted summary judgment for the defendants, recognizing that "when [the loan servicer] later recorded the rescission, this effectively retracted the notice of default and restored the parties to the prior status they held before the notice of default was filed." *Id.* (citing *Holt v. Reg'l Tr. Servs. Corp.,* 266 P.3d 602, 606 (Nev. 2011) (a rescission of a notice of default rendered challenges to the notice of default moot)). The Nevada Supreme Court affirmed judgment against the homeowner, stating, "[w]e conclude NRS 106.240 is inapplicable here because [the loan servicer] rescinded the notice of default." *Id.* The Nevada Supreme Court denied rehearing and *en banc* reconsideration.

---

[3] The subsections surrounding NRS 106.240 set clear and explicit requirements as to when certain types of documents effect recordation. NRS 106.220 makes explicit that an instrument subordinating or waiving the priority of a deed of trust must be recorded and sets conditions for such recording. NRS 106.260 similarly sets requirements for the recording of an instrument discharging or releasing a mortgage or lien, including that such recording can be done in the margin of the record itself.

[4] In *Glass*, the parties and the court assumed a default notice triggered NRS 106.240. Shellpoint disputes a default notice makes the loan wholly due under NRS 106.240. *See infra* at Section V.B.2-3. Shellpoint presents statutory history not mentioned in the *Glass* briefing showing that Nevada's legislature did not intend unrecorded letters or default notices to trigger NRS 106.240. *Supra* at 7-8.

8

57948960;1

This court has also concluded NRS 106.240 is inapplicable when a default notice is rescinded. *TRP Fund VIII, LLC v. Newrez, LLC*, No. 2:20-cv-01001-APG-BNW, 2020 WL 5913991, at *1 (D. Nev. Oct. 6, 2020) (granting a motion to dismiss "[b]ecause the trustee canceled the acceleration through the rescission of the notice of default, the deed of trust has not been extinguished by operation of § 106.240"). Others courts in this district have ruled the same. *Nationstar Mortg., LLC v. Torrey Pines Ranch Estates Homeowners Ass'n*, No. 2:16-cv-00375-JAD-BNW, 2021 WL 682056, at *6 (Nev. Feb. 19, 2021); *Bank of Am. v. Solera at Stallion Mountain Homeowners Ass'n*, No. 2:16-cv-00286-GMN-GWF, 2021 WL 92860 (D. Nev. Jan. 11, 2021).

The Hos' default notice was rescinded before the ten-year mark. Compl. at ¶ 20. The rescission's language is virtually the same as the rescission in *Glass*, and like *Glass,* restored the parties to the prior status they held before the default notice was recorded. *Compare* **Exhibit P**[5] *with* Ex. D. NRS 106.240 is inapplicable and does not provide a basis for the Hos to clear title to property securing a loan they admittedly defaulted on over a decade ago.

### 5. The 2014 NOD does not prove the loan remained accelerated

In *Glass*, the Nevada Supreme Court recognized a rescission notice decelerates any acceleration, and lenders may re-accelerate in the future. 2020 WL 3604042, at *1 ("In order to accelerate the entire balance due under the Note in the future, [the loan servicer] would have to record a notice of default under NRS 107.080"). The rescission here decelerated the loan and re-acceleration was appropriate at the lender's discretion should the Hos fail to satisfy their loan obligations. ECF No. 17 at ¶¶ 134-137; 141-144. Even assuming the loan was accelerated again ***in the future*** by virtue of the 2014 default notice, the current title holder would have to wait until 2024 to attempt another suit alleging application of NRS 106.240. That the Hos defaulted in 2010 has no bearing on acceleration or deceleration. *See Trident Ctr. v. Connecticut Gen. Life Ins. Co.*, 847 F.2d 564, 568 (9th Cir. 1988) ("[w]hen there is a default, acceleration does not occur automatically. It is merely a contractual *option* given to the beneficiary for his benefit, and acceleration only occurs when the beneficiary *affirmatively* elects to declare the balance of the principal and interest due.").

---

[5] The court may also take judicial notice of the notice of default from the *Gentile* case, which is a matter of public record contained in volume III of the appendix on appeal in Nevada Supreme Court Case No. 78325.

57948960;1

### 6. Alternatively, NRS 106.240 was tolled by the prior litigation

NRS 106.240's application is not automatic and can be precluded by equitable considerations. In *Pro-Max Corp. v. Feenstra*, 16 P.3d 1074 (Nev. 2001), the court found that, while the ten-year period under NRS 106.240 had unquestionably passed, NRS 106.240 did not automatically terminate the lien. *See id.* at 1079. Instead, the court remanded the case for further proceedings on whether an equitable consideration—there, estoppel—precluded that result. *Id.* Had equitable considerations been entirely off limits, there would have been no basis for remand. *Feenstra* is consistent with Nevada's long line of decisions holding that courts retain the power to fashion equitable remedies in cases involving real property. *See, e.g.*, *Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1111 (Nev. 2016).

The time has not yet run because the period was tolled during the pendency of A Oro, LLC's quiet title case, which lasted approximately four and a half years from the time it was filed in August 2014. Without such tolling, A Oro, LLC would receive a windfall for prolonging litigation over the deed of trust's validity until the eve of the ten-year period's expiration. A Oro, LLC continued fighting the issue until judgment against it was affirmed on appeal in July 2019. If the Hos arguments are to be believed, the bank would have only achieved final judgment, affirmed on appeal, with less than six months before NRS 106.240 purportedly extinguished the deed of trust.

Tolling the ten-year period is also equitable because it advances the public interest in clear and reliable land records. The property records contain two default notices, Exs. C, E, a rescission, Ex. D, a superpriority satisfaction notice, Ex. I, the HOA foreclosure deed, Ex. H, the lis pendens and release of lis pendens from the quiet title action, **Exhibits N, O**, and deed of trust assignments as recent as 2020, Ex. B. No one could plausibly infer from those records the lien was satisfied, abandoned, or forgotten. The recorded instruments show unequivocally Shellpoint not only intends to protect and enforce the deed of trust, but actively defended litigation to that end. Holding the ten-year period continues to run under those circumstances would introduce confusion and uncertainty, not clarity. Equity cuts firmly against applying a statute to "conclusively establish[]" a lien's termination "when, in fact, no [discharge] occurred." *Shadow Wood*, 132 Nev. at 57.

///

10

Adopting the Hos' position, by contrast, would undermine the years of work by the Nevada state and federal courts, resolving the substantial volume of litigation regarding the effect of HOA foreclosures on lien interests based on tender and/or the Federal Foreclosure Bar. *E.g.*, *Bank of Am. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620 (9th Cir. 2019); *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 120 (Nev. 2018); *Berezovsky v. Moniz*, 869 F.3d 923 (9th Cir. 2017); *Daisy Tr. v. Wells Fargo Bank, N.A.*, 445 P.3d 846 (2019). Allowing NRS 106.240 to terminate the deed of trust here would usher in a wave of new litigation seeking to re-litigate and erase those results. The public interest favors resolving title disputes efficiently, not creating incentives for parties to prolong them.

Terminating a lien under NRS 106.240 whose validity had been the subject of litigation between the lienholder and the titleholder for a substantial portion of the ten-year period would also violate the universally recognized canon against interpreting statutes in a manner leading to absurd results. "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982).[6] Terminating the lien here would conflict with the statute's purpose, with decisions of other states addressing similar statutes, with Nevada's approach to substantively similar statutes, and with conventional notions of fairness and justice.

### C. The Hos' fraud/misrepresentation claim fails

The Hos' claim for fraud/misrepresentation is not pled with the specificity required by Rule 9(b). The claim also fails on the merits because the deed of trust was not discharged by NRS 106.240, and Shellpoint's legal position regarding the effect of NRS 106.240 cannot be construed as a fraudulent misrepresentation of fact.

#### 1. The claim is not pled with particularity

A claim for fraud must be pled with specificity. FED. R. CIV. P. 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v.*

---

[6] The Nevada Supreme Court concurs: "When interpreting a statute, this court resolves any doubt as to legislative intent in favor of what is reasonable, and against what is unreasonable. … A statute should be construed in light of the policy and the spirit of the law, and the interpretation should avoid absurd results." *Hunt v. Warden*, 903 P.2d 826, 827 (Nev. 1995).

11

57948960;1

*Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997)).

The Hos' fraud/misrepresentation claim is not pled with specificity. The Hos fail to identify the allegedly false information conveyed to them by Shellpoint, how they justifiably relied upon it, and how they were subsequently damaged. At most, the Hos only generally allege the content of the alleged misrepresentations. This does not satisfy Rule 9(b).

### 2. The fraud/misrepresentation claim fails on its merits

A fraudulent misrepresentation claim requires: (1) a false representation of fact, (2) that the defendant knew or believed was false, (3) intended to induce the plaintiff to act or refrain from acting, and (4) damages to the plaintiff as a result of relying on the misrepresentation. *Barmettler v. Reno Air*, 114 Nev. 441, 447 (1998).

The Hos' claim rests on the same basis as their quiet title claim—the deed of trust was discharged as a matter of law under NRS 106.240. As discussed above, the Hos' interpretation of NRS 106.240 is wrong. In addition, whether the deed of trust was discharged under NRS 106.240 is a legal question; it is not a fact that Shellpoint can fraudulently misrepresent. The Hos also fail to allege how they were induced to act or refrain from acting by Shellpoint taking this legal position, or how they were damaged. They already lost the property to foreclosure by the HOA; foreclosure by Shellpoint will not affect the Hos' non-existent interest in the property.

### D.   The Hos are not entitled to equitable rescission

The Hos seek equitable rescission of the note and deed of trust. "Rescission is an equitable remedy which totally abrogates a contract and which seeks to place the parties in the position they occupied prior to executing the contract." *Bergstrom v. Est. of DeVoe*, 854 P.2d 860, 861 (Nev. 1993). The Hos seek rescission based on their incorrect interpretation of NRS 106.240. As discussed above, the deed of trust was not extinguished.

Also, NRS 106.240 only speaks to the enforceability of the mortgage *lien*—the deed of trust. It cannot separately cancel a party's personal obligation to pay under the note. By signing the note, the Hos promised to pay the $247,600 they borrowed. By signing the deed of trust, they agreed to give the lender a security interest in the property to recover the debt if they defaulted. But the note

12

1 and deed of trust are two separate documents with separate remedies. Even if the HOA sale
2 extinguished the deed of trust, the lender could still pursue the Hos for the amounts owed under the
3 note (unless barred by a bankruptcy discharge). Likewise, even if the deed of trust was discharged
4 by NRS 106.240 (it was not), it would not entitle the Hos to rescind their obligations under the note.

### E. Amendment would be futile

The Hos' complaint should be dismissed with prejudice and without leave to amend. A district court may dismiss without leave where amendment would be futile. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). The pleading deficiencies in the Hos' complaint stem from their incorrect legal interpretation of NRS 106.240, and cannot be corrected by re-pleading. The court should dismiss the complaint with prejudice.

### VI. CONCLUSION

The Hos no longer hold title to the property and lack standing to seek to extinguish the deed of trust continuing to encumber the property. The complaint also fails on the merits. Under NRS 106.240, the deed of trust does not become wholly due until 2035. Even if acceleration could trigger NRS 106.240, the 2012 rescission decelerated the loan. Additionally, tolling applies to extend the deadline based on the four years Shellpoint's predecessor spent defending the deed of trust from meritless attacks of the HOA-sale purchaser. The deed of trust remains a valid encumbrance against the property which was not discharged by NRS 106.240.

Dated: April 28, 2021.

**AKERMAN LLP**

*/s/ Jamie K. Combs*
ARIEL STERN, ESQ.
Nevada Bar No. 8276
NATALIE L. WINSLOW, ESQ.
Nevada Bar No. 12125
JAMIE K. COMBS, ESQ.
Nevada Bar No. 13088
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134

*Attorneys for NewRez LLC dba Shellpoint Mortgage Servicing, LLC*

13

57948960;1

# INDEX OF EXHIBITS

| | |
|---|---|
| Exhibit A | Deed of Trust |
| Exhibit B | Corrective Assignment Deed of Trust |
| Exhibit C | Notice of Default/Election to Sell Under Deed of Trust |
| Exhibit D | Rescission of Eelection to Declare Default |
| Exhibit E | Notice of Default and Election to Sell Under Deed of Trust |
| Exhibit F | State of Nevada Foreclosure Mediation Program Certificate |
| Exhibit G | Notice of Trustee's Sale |
| Exhibit H | Foreclosure Deed Upon Sale |
| Exhibit I | Release of Super Priority Lien Pursuant to NRS 116.3116(2) |
| Exhibit J | Complaint |
| Exhibit K | Findings of Fact, Conclusions of Law, and Order Granting Ditech's Motion for Summary Judgment |
| Exhibit L | Order of Affirmance |
| Exhibit M | Clark County Assessor's Printout |
| Exhibit N | Notice of Pendency of Action |
| Exhibit O | Release of Lis Pendens |
| Exhibit P | Joint Appendix Volume III |

14

57948960;1